ERNEST F. GOLDSMITH *v.* HOWARD N. KINGSFORD *& a.*

*Laurence I. Duncan* and *Robert W. Upton* (*Mr. Upton* orally), for the plaintiff.

*Ernest R. D'Amours*, Assistant Attorney-General (by brief and orally), for the Board.

ALLEN, C. J. By statute (R. L., c. 250, s. 13) the State Board of Medical Examiners is empowered to register and license without examination applicants to engage in the practice of medicine who are "legally qualified to treat human ailments or to practice medicine in any State or country whose requirements the board deems equal to those in this State," upon the payment of the prescribed fee. Such a license may be revoked, after hearing, for a number of reasons, including the obtainment of it "by fraudulent means." *Ib., ss.* 14, 15.

The jurisdiction of the courts to review the proceedings and orders of administrative agencies of the State when the legislature has made no provision for appeals from their orders has been held to be confined to questions of their "jurisdiction, authority or observance of the law." *Cloutier* v. *Board, ante,* 199.

In observance of the law, an agency's findings of fact as the basis of orders must be reasonably supported by the evidence. While such bodies are not held to the rules of evidence employed by strictly judicial tribunals, conclusions must be rational and logical to be legal. Inferences which cannot be drawn without the support of conjecture are arbitrary, and in making them the law is not observed. As has been said, the evidence before an administrative body may be "The kind of evidence which responsible persons are accustomed to rely upon in serious affairs." *National &c. Board* v. *Company,* 94 Fed. (2d.) 862, 873.

Considering the issue whether the plaintiff obtained his license by fraudulent means under this act, it is to be observed that the statute requires the fraud to be causal. If the fraud was practiced but was of no efficiency in obtaining the license, a condition of the statute' for revocation of the license was not met. It was for the Board to receive evidence of the causal force of the fraud. Without evidence supporting the finding of such effect of the fraud, the finding may not be upheld as valid. The Board has found that the license was obtained by the plaintiff "by deliberately and fraudulently misleading the Board with respect to his full medical qualifications," and that if it "had known at the time of application what it knows now about his medical scholarship and experiences as a result of the

evidence in this case, it would not have granted" him a license without examination.

A review of the evidence reveals its insufficiency for a reasonable conclusion of causal fraud in obtaining the license.

The application was received April 19, 1938, and the license granted May 10, 1938, apparently on the approval of three of the five members of the Board as it was then constituted, the other two taking no part. One who approved was the secretary of the Board, Dr. Clow. During the pendency of the application he asked by letter for suggestions from all the other members on the two points of numerous applications from men from Europe and of the plaintiff's "unique character." The letter stated the plaintiff's medical education, with "much of his time" spent in research "in about every branch of medicine fundamental and clinical" and with the remark: "He is obviously a highly trained, scientific scholar." The record indicates no other inquiry or discussion in connection with the application.

The plaintiff came to this country in 1926 from Germany where he was born and had lived. When emigrating he was thirty-four years old. He became a citizen of the United States in 1932. While living in Germany he had academic education and received advanced degrees. On coming to this country he studied for the medical profession and was engaged in medical research under practicing medical specialists and in connection with medical institutions. In 1932 he went to Prague in Czechoslovakia where he became a medical student in the German University of Prague. Its medical department is one of excellent standing. In three medical examinations there with six different subjects, in each he obtained satisfactory marks and was given the degree of doctor of medicine in 1937, when he returned to this country, residing in New York City until he came to New Hampshire upon notice of eligibility to be licensed to practice here as soon as he acquired local residence.

Before going to Prague he attended the medical schools of Yale, New York, and Columbia Universities. He failed in his examinations in the two schools first mentioned. This was in 1930. His failure at New York University preceded that at Yale.

Two charges of fraud in the application are made. One is the omission to state these failures under the heading of "Medical Education." The other is the statement that he had been "examined and licensed" in Czechoslovakia. No license there had in fact been granted.

The plaintiff disclaims any fraud in the misstatement. The only pertinent evidence before the Board was that his degree obtained at Prague gave to citizens of Czechoslovakia the right to a license to practice there, and that because he was an alien there, a special permit was needed, as a formality, and with no question of his medical qualifications. In other words, his degree entitled him to practice there, on compliance with some routine governmental regulations for practice by aliens.

The application form furnished by the Board and filled out by the plaintiff and an appendix accompanying it as a certified translation of various documents disclose that the plaintiff's statement in the application of having been licensed was clearly qualified by setting forth the fact that no license had been issued and the reason why.

One requirement of the application form was to furnish a "Certified Copy of State or National Board License or Certificate." The plaintiff wrote after this item: "is enclosed, translation." The translation of documents contained one of the degree of doctor of medicine conferred upon him at Prague in which the following appears: "Being an alien, the holder renounces the right to practice medicine within the territory of the Czechoslovakian Republic. He is not entitled to practice medicine in said territory unless he secures a special permit to practice medicine in accordance with section 6 of the law as of June 28, 1929." The failure to furnish a certified copy of certificate of the license was self-evident and the reason for the failure definitely explained. The application and appendix thus showed the inaccuracy, considered alone by itself, of the statement of having been licensed, and the statement of the facts amounted fairly to a correction of the inaccuracy. An intent to mislead by the statement of having been licensed cannot fairly be found, and this charge of fraud must be rejected. The lack of a certified copy or certificate of the license was demonstrated by the application, and the explanation for it was satisfactory to the Board.

If it can be found that the plaintiff intended to mislead the Board by the omission to state his failures in examination, the conclusion that the Board was in fact misled is altogether problematical. The omissions fairly could be only of minor significance. The failures in examinations could only negligibly detract from his subsequent record as a student and from his experience in research work. The failures occurred early in his study of medicine and within four years after his emigration to this country. If not

altogether negative in their bearing on his educational fitness to practice, his later studentship for a period of four or five years, and his incidental research work throughout his course of preparation, were subjected to no criticism. Dr. Clow's reference to him as "highly trained," and his doubts confined to other points than of educational qualifications do not reasonably show that any fraud affected and influenced him. At most, what he would have done if there had been no fraud can be found only speculatively.

Of the three members of the Board whose action resulted in the license, only one, Dr. Smith, was a member of the Board as constituted when the license was revoked. Dr. Clow, as secretary of the Board at the time of the application had immediate charge of it and, so far as appears, the two others had no views differing from his. While Dr. Smith has signed the order of revocation, he did not testify at the hearings upon the charges. The burden to establish causal fraud was upon the State, and evidence at the hearing tending to show such an effect of the fraud was required. While Dr. Smith perhaps knew his own mind, the other members could not tell what it was without evidence at the hearings. The plaintiff, having the statutory right to be heard, was entitled to contest the issue and to undertake to meet and rebut any evidence which the State might present to show a misleading effect of the alleged fraud. None being offered, proof of an essential issue failed.

Much evidence of doubtful relevancy upon the charges was received at the hearings. It related to the plaintiff's skill and conduct in the practice of his profession since he was licensed here. It was apparently received as having some bearing on the charge of fraud in the application. It could fairly have had none on the question of the causal quality of the alleged fraud. Since it was all of matters after the license was issued, it was wholly indeterminative of the Board's action in passing upon the application. In the nature of things they could act only upon the information then before them and then available.

The finding that present knowledge of the plaintiff's "experiences," as well as of his scholarship, would have resulted in a denial of the application, evidently refers to his conduct in his practice after obtaining his license, and predicates a license granted partly upon a mistaken foresight of the future. The only charge is of fraudulent means in obtaining the license. The success of the means, which related only to scholarship, could not, under any test of logical relevancy, be proved by evidence of subsequent in-

sufficiency of attainments in skill and ethics. Whether his service in assisting doctors or in institutional appointments was as an interne or externe in its characterization, it remains that no claim of fraud in his statements about such service has been preferred.

While the Board is a body of experts, the issue of causal fraud is to be resolved as an ordinary question of fact with no application of expert or special knowledge. Evidence from which a rational inference sufficient to warrant a finding of probability rather than of mere possibility, was required. Evidence to have probative value must be relevant under principles of logic to support a conclusion drawn from it. As no sufficient evidence was presented to establish causal fraud, the order of revocation on the ground of fraud was not rightfully made.

Certiorari will be denied if justice does not require it to be granted. *Moffatt* v. *Gale, ante*, 421, and cases cited. If the plaintiff was not "legally qualified" to practice medicine in some other state or country under the standard required by the statute above cited, the Board acted *ultra vires* in licensing him without examination. If the original license was granted without authority, it was void, and no injustice is done by its revocation on other grounds.

It therefore becomes decisive, as a final issue, to construe the words "legally qualified" as they appear in our statute.

A fair translation of section 6 of the Czechoslovakian law of June 28, 1929, is this: "In so far as by treaties with other states, conditions under which doctors who are citizens of these other states, have the right to practice medicine in the territory of the Czechoslovakian states, are established or will be established, these treaties are decisive (statutable)."

In its research of the law, according to *Saloshin* v. *Houle*, 85 N. H. 126, this court ascertains that "There is not in force, and there has not been in force at any time, between the United States and Czechoslovakia any treaty containing provisions relating to the rights of the nationals of either country to practice medicine or to engage in professional or other occupations in the other country." Letter of Cordell Hull, Secretary of State, of May 27, 1943.

If it might be held that the requirement that an applicant be legally qualified to practice elsewhere is not so insistent as to call for literal compliance with details of merely formal and ministerial observance, so that legal qualification to practice elsewhere may fall short of actual permission to practice there, yet here the lack of a treaty creates an absolute legal disqualification. Although

the plaintiff was professionally qualified to practice in Czechoslovakia, and hence in this State, in the absence of a treaty it was illegal for him to practice there, and utter illegality or lack of legal right is not within full legal qualification. To be "legally qualified," under a fair construction of the statute, one must have at least a substantive and practical right in addition to the possession of professional attainment, otherwise the word "legally" would be surplusage. Equivalence of professional standards is not enough. An insurmountable bar of the right to practice in Czechoslovakia existing, the plaintiff is barred from a license here without successfully passing an examination. No conditions upon which he may practice there have been established. An essential condition of legality without examination is missing.

*Certiorari denied.*

All concurred.