[Civ. No. 14657. First Dist., Div. One. Aug. 15, 1951.]

JAMES MOORE JONES, Appellant, v. JOHN R. MALONEY, as Insurance Commissioner, etc., Respondent.

82

Lloyd E. McMurray and Gladstein, Andersen & Leonard for Appellant.

Edmund G. Brown, Attorney General, T. A. Westphal, Jr., and Harold B. Haas, Deputy Attorneys General, for Respondent.

BRAY, J.—A hearing conducted by the respondent Insurance Commissioner under the provisions of section 1731 of the Insurance Code culminated in the revocation of petitioner's licenses as an insurance agent and an interinsurance agent. Petitioner applied to the superior court for a writ of mandate to vacate the orders making such revocation. Exercising its independent judgment on a consideration of the proceedings before the commissioner (no additional evidence was offered) the trial court found that the commissioner's decision is supported by the findings and the findings by the evidence. It also found that petitioner wilfully inserted false statements in his applications for the licenses. The court by order denied the petition. Petitioner appeals.

### QUESTIONS PRESENTED

1. Sufficiency of evidence to support findings that petitioner wilfully made misstatements in his application.

2. Sufficiency of the evidence and the findings that he obtained his license by concealment and misrepresentation.

### RECORD

On March 4, 1948, petitioner applied for a license as an interinsurance agent and it was granted June 14. On July 22 he applied for a license as an insurance agent. This license was granted September 10. December 10, respondent filed an accusation against petitioner alleging that petitioner had obtained said licenses by wilfully answering "No" to question 14 in each application and that he obtained the licenses "by concealment and/or knowing misrepresentation." Question 14, in each application, reads:

"Have you ever been convicted of a misdemeanor other than a traffic offense? ———

"You should answer the above questions in the affirmative if any conviction ever took place irrespective of Executive pardon, or any withdrawal of pleas of guilty, or vacations of a verdict of conviction based on the right of a discharged probationer that may have been allowed since that conviction. If your answer to either of the above questions is in the affirmative please write a supplementary statement giving the court in which you were convicted, the date of your conviction and a statement of the acts which gave rise to the conviction; also include a certified copy of the judgment of conviction. If there is any pardon or order of dismissal based on withdrawal of a plea or vacation of a verdict, certified copy of documents evidencing these acts should likewise be included herewith."

After the hearing, the commissioner adopted the proposed decision of the hearing officer, revoking the licenses. The commissioner later denied a petition for reconsideration. The decision finds that in each application petitioner (1) knowingly made a misstatement, and (2) obtained each license by concealment and misrepresentation; that both matters constitute grounds for disciplinary action under section 1731(b) of the Insurance Code.

### EVIDENCE AS TO WILFUL MISSTATEMENTS

In reviewing the evidence before the commissioner the trial court was authorized by law to exercise its independent judgment on the evidence. ■ Our province, however, is to determine whether there is any substantial evidence, contradicted or uncontradicted, which will support the findings of the trial court to the effect that the charges against petitioner were supported by the weight of the evidence. (*Moran* v. *Board of Medical Examiners,* 32 Cal.2d 301 [196 P.2d 20].) While there is evidence which would have supported a finding by the board or the trial court to the contrary, there is ample substantial evidence to support the findings made. On November 23, 1928, in the police court of Palo Alto, petitioner was tried on a misdemeanor charge—violation of section 224 of the ordinances of that city, "to wit, disturbing a public assemblage." He was found guilty, and waived time for pronouncement of sentence. The court "ordered and adjudged that as a punishment . . . [he] be committed to the County Jail for Six months . . . which sentence is suspended on condition . . . [he] leave Palo Alto and remain away." According to a statement signed by petitioner and introduced in evidence this charge arose out of the fact that when the newly elected President Hoover was leaving Palo Alto for Washington, petitioner and others paraded with banners asking that the Marines be withdrawn from Nicaragua. According to the statement, petitioner was then a college student. He was held in the Palo Alto jail for a night and a day.

On November 4, 1939, petitioner was convicted in the municipal court of San Francisco of a misdemeanor, to wit, disturbing the peace and resisting an officer. He was sentenced to two days in the county jail. His sentence was suspended. The abovementioned statement sets forth that this charge arose out of the fact that a policeman called him a name whereupon petitioner "swung" on the policeman. Apparently petitioner got the worst of the "swinging." He testified that he was

taken to the emergency hospital and received medical attention and that when he was taken to court the judge said, " 'Well, I guess you have suffered enough,' and he let me go."

Petitioner testified that in answering "No" to question 14 he did not realize that he had been convicted of the two misdemeanors or sentenced on them, as, in each case, he had been immediately released by the court. However, the testimony of one Wade, an investigator for respondent, completely contradicts petitioner and affords ample foundation for the finding that petitioner wilfully and knowingly misrepresented the situation. Wade testified that prior to the filing of the accusation he interviewed petitioner; that he went over with petitioner his applications and the questions and answers thereon; that he asked petitioner several times if he had ever been convicted of a misdemeanor and also several times if he had ever been arrested. Petitioner stated that he had not. It was not until Wade showed petitioner the records of these convictions that he finally admitted that he had been arrested. He told Wade that as to the San Francisco case he did not know what, if any, sentence was imposed. Petitioner signed and swore to a statement which Wade wrote out during the discussion and which he claims contains what petitioner told him. It states: "I . . . received a 6 months suspended sentence, as I recall it." The statement then goes on: "I did not mention these incidents on my applications for insurance licenses because I considered them very much in the past and immaterial." Wade testified that petitioner also stated that he answered "No" to the questions for the reason "that if the record was known it would hurt him in the business and he felt the cards would be stacked against him if he had admitted these arrests. MR. SAMUEL [deputy insurance commissioner]: Q. Now, when you speak of arrests do you mean arrests and convictions? A. Yes, the arrests and the convictions—in fact, his whole record, because he had denied the whole record, arrests and convictions, and he felt that the whole thing would work against him and he didn't want it to be known." On the witness stand petitioner was somewhat evasive.

At a later hearing Dr. Tuchler, a psychiatrist, testified that he was appearing at the hearing on his own initiative; that he had seen petitioner as a private patient in the years 1944, 1945 and 1946; that in January, 1949, petitioner was referred to him by the State Bureau of Vocational Rehabilitation; that

petitioner has a neurotic difficulty; also that he has a marital problem which affects his anxiety neurosis; that in his opinion, petitioner is so concerned, confused and disturbed that he could not remember what had happened at the time of his arrests and that petitioner could not wilfully defraud anyone.

Petitioner claimed that he had not told the investigator Wade that he had ever been convicted nor had he denied being arrested. He did admit, however, that it was not until after Wade showed him the pictures attached taken by the police that he said he had been arrested. While there was evidence upon which the commissioner and the court could have found that petitioner did not realize that he had been convicted and hence made the statements on the application in good faith, such evidence does not compel that result. Taking the evidence as a whole it clearly appears that the trial court was justified in finding that the weight of the evidence supported the commissioner's conclusions.

Petitioner contends that the actions of the criminal courts did not constitute convictions. In the Palo Alto case the docket shows that the defendant was found guilty and the court ''ordered and adjudged that as a punishment for the offense . . . [he] be committed to the County Jail for Six months . . . which sentence is suspended . . .'' In the San Francisco case the record reads: ''the said defendant having been duly convicted in this Court of the crime of Misdemeanor, to-wit: Dis[turbing] the Peace and Resisting an Officer. It is ordered and adjudged as a punishment therefor, that the said defendant be imprisoned in the County Jail . . . for the period of 2 days. Sentence suspended.'' In *In re Phillips*, 17 Cal.2d 55 [109 P.2d 344, 132 A.L.R. 644], cited by petitioner, the same contention was made as is made here, namely, that there was no conviction. The exact order there was that defendant be imprisoned in the county jail for 180 days, ''execution suspended for 2 years and respondent placed on probation on condition he serves 175 days in City Jail.'' The opinion states that the power of the court to grant probation may be exercised in either of two ways: (1) It may suspend the imposition of sentence, in which case there is no judgment of conviction, or (2) it may impose the sentence and thereafter suspend its execution. It then pointed out that it was clear from the language of the order that the court rendered its judgment of conviction and then suspended its execution. Applying the test of the Phillips case to the judgments in our case it is equally clear that in each instance

the court rendered its judgment of conviction and then suspended its execution.

Petitioner argues that the matters concealed were such that had they been known to the commissioner and not concealed, they would not have caused a denial of the licenses. As far as the charge of misstatement is concerned, this is immaterial. Section 1731 of the Insurance Code provides: "The commissioner may suspend or revoke any license . . . if, after a hearing . . . he determines . . . (b) Such person has knowingly or wilfully made a misstatement in an application to the commissioner for a license . . ." There is nothing in the act which limits the misstatement to one concerning a matter which, if known, would cause a denial of the license. It is the *fact* of wilful concealment that is important, rather than the matter concealed.

Petitioner relies for his contention that the concealment of a fact which, if revealed would not justify the refusal of a license, will not support a revocation of the license, on certain cases in California and outside the state. The California cases are in connection with disbarment proceedings. *In re Jung,* 13 Cal.2d 199 [88 P.2d 679], does not support this proposition. There the referee appointed to investigate the charge that in his application to take the bar examination respondent had made false answers to certain statements, found that respondent did not knowingly or wilfully conceal any material facts or make any false answers. There is no discussion of whether the answers, if false, would or would not have barred his being permitted to take the bar examination. In *State Bar* v. *Rollinson,* 213 Cal. 36 [1 P.2d 428], the decision was based upon the refusal of the District Court of Appeal to admit evidence to show that respondent's misstatements did not constitute a wilful fraud, and upon a holding that the evidence that was introduced showed an absence of bad faith and intentional fraud on his part. Just why appellant cites *State Bar* v. *Turner,* 31 Cal.2d 842 [192 P.2d 897], is not clear, as there the court revoked an order admitting respondent to the bar on the ground of concealment of certain misdemeanor convictions. He requested permission to show that at the time he applied to take the bar examination he was suffering from a nervous and mental illness which made him incapable of remembering the convictions or of formulating a wilful and fraudulent intent. In refusing to admit such evidence the court said that it was immaterial that because of mental condi-

tion, respondent may not have been guilty of intentional concealment. This holding is interesting in view of the fact that in our case the psychiatrist testified that petitioner because of his nervous condition had no memory and was incapable of wilful concealment. Petitioner cites three out-of-state cases. *Louisiana State Board of Dentistry* v. *Hodge,* 160 La. 743 [107 So. 511], dealt with a situation where the board claimed that the defendant in obtaining his license to practice dentistry had falsely represented that he was a graduate of a certain dental college. Defendant denied that he had made such representation. The Supreme Court held that he did not make it and that it was clear that the board out of sympathy for defendant because he was a war veteran, had waived its requirement that he be a dental school graduate. Again in *Mississippi State Bd. of Dental Examiners* v. *Mandell,* 198 Miss. 49 [21 So.2d 405], the decision setting aside an order of the board revoking defendant's license to practice dentistry was based upon the court's determination that there was no proof that defendant in obtaining his license had knowingly or wilfully misrepresented. *Goldsmith* v. *Kingsford,* 92 N.H. 442 [32 A.2d 810], is a case in which the board's finding that defendant obtained his medical license by fraudulent means was upheld. There is some language, however, to the effect that the fraud must be causal before a license may be revoked. However, the charge there was that defendant had obtained his license *by* fraudulent means. As we point out later in connection with the second charge in our case, under such a charge the materiality of the misstatement or fraud becomes important. None of the cited cases supports the proposition that where the statute provides, as does section 1731 of the Insurance Code, that a license may be revoked where a person has ''knowingly or wilfully made a misstatement'' in his application, such misstatement must be of a matter which if known to the commissioner would cause a denial of the application.

Petitioner has cited a number of cases which held certain statutes and ordinances regulating insurance agents unconstitutional because arbitrary or unsound. It is not necessary to discuss them as there is no resemblance between them and section 1731 of the Insurance Code. ■ It cannot be said that a statute requiring an applicant for an insurance agent's license to answer truthfully whether he has ever been convicted of a misdemeanor is either arbitrary or unsound. Whether the particular misdemeanor is one which will affect

the applicant's right to a license is for the commissioner to determine rather than for the applicant.

## SECOND CHARGE

However, on the charge of having obtained his license by concealment or misrepresentation, the materiality of the matter concealed or misrepresented becomes important. Section 1731 provides that the commissioner may suspend or revoke a license if the license holder "has obtained his license by concealment or knowing misrepresentation." In determining this question it becomes important to ascertain whether the matter was such as, if known, would have caused a denial of the license. If it was not, then the license was not obtained by suppressing the truth on this subject. Under this portion of the section, two things are required: (1) the concealment or knowing misrepresentation (as pointed out above there is substantial evidence of this); (2) a showing that this concealment or misrepresentation was of such a nature that it was the cause of the obtaining of a license which otherwise would have been denied. (There is no evidence of this fact.) So far as the record goes there is nothing in the circumstances of the two convictions, one almost 20 years, the other almost nine years, prior to the applications, which would have justified the commissioner in denying the license to petitioner. Nor is there any finding to support the conclusion that petitioner did obtain his license by concealment and misrepresentation of the two convictions.

The hearings on the accusation necessarily were under the provisions of the Administrative Procedure Act (Gov. Code, § 11500 et seq.). Section 11517 relates to "Method of Decision in Contested Cases" and provides that if the case is heard by a hearing officer alone (the situation here) he shall prepare a proposed decision in such form that it may be adopted as the decision in the case. The agency (in this case, the commissioner) may adopt the proposed decision in its entirety (the commissioner did) or may reduce the proposed penalty and adopt the balance of the proposed decision. Section 11518 provides: "The decision shall contain findings of fact, a determination of the issues presented and the penalty, if any." This language suggests an analogy to a decision of the superior court comprised of "findings of fact" and "conclusions of law." The "penalty" feature appears somewhat comparable to the "decree" or "judgment" of the superior court. The decision here is prefaced with the statement that the "Hear-

ing Officer makes the following findings of fact." It then finds true certain matters set forth in paragraphs I to V inclusive of the accusation, and that "Except as hereinabove found, the other allegations contained in Paragraphs I to V, inclusive, of said Accusation are untrue." ▮ The matters set forth in paragraphs I to V found to be true are the matters of wilfully and with knowledge misstating the answers to question 14 in each application. There is no finding of fact that had the answers to that question been truthfully given the licenses would have been withheld. ▮ Then, in the decision the hearing officer "makes the following determination of the issues presented" (comparable to a court's "conclusions of law"). As it relates to the matter before us it states "That respondent has obtained each of his said licenses by concealment and knowing misrepresentation, which constitutes grounds for disciplinary action . . . under the provisions of subdivision (b) of Section 1731 of said Insurance Code." Insofar as this is a finding of more than that there was concealment and knowing misrepresentation, it is not a finding but a conclusion. There is, then, no finding that as a fact, the licenses were obtained by this concealment or misrepresentation. To put it another way, there is no finding that the concealment and misrepresentation were of a material fact which would have influenced the commissioner in his issuance of the licenses. The rules as to findings by an administrative agency have been set forth succinctly in *Swars* v. *Council of City of Vallejo,* 33 Cal.2d 867, 872 [206 P.2d 355] : "Although administrative findings must conform to the statutes governing the particular agency, they need not be stated with the formality required in judicial proceedings [citations]. In connection with the action of an administrative board, the fact that certain action is taken or recommendation made may raise a presumption that the existence of the necessary facts was ascertained and found. [Citations.]" In our case we have a statutory requirement that findings be made in addition to "a determination of the issues presented" (Gov. Code, § 11518). ▮ While as above set forth the findings need not be stated with the formality required in judicial proceedings the statement in section 11518, "The findings may be stated in the language of the pleadings or by reference thereto," indicates that there must be findings sufficient to enable this court to determine that the commissioner actually found the necessary facts to support his determination of the issues. a mere conclusion, particularly where there are no facts in

the evidence to support it, is not sufficient. Section 1731 states that licenses may be suspended or revoked if, after a hearing, the commissioner "determines that any of the following *facts* exist"—he "has *obtained* his license *by* concealment or knowing misrepresentation." (Italics added.) ██ The missing finding in our case is the fact that the licenses were obtained *by* the concealment. The findings say nothing about the licenses having been "obtained" either by "concealment" or by "knowing misrepresentation" and the evidence in the case is not sufficient to have supported such a finding had one been made. The misdemeanor convictions were of ancient date. The offenses themselves bear no peculiar or apt relation to petitioner's qualifications for·a license as an insurance agent. As there is no sufficient finding of fact to support it, the second charge must fall.

The commissioner made a single order of revocation based on his conclusions that both charges had been substantiated. Inasmuch as we hold that the findings are not sufficient as to the second charge, and we have no way of knowing what penalty the commissioner would have imposed on the first charge alone, the judgment must be reversed and the matter sent back to the commissioner for reconsideration of the penalty. (*Garfield* v. *Board of Medical Examiners,* 99 Cal.App.2d 219 [221 P.2d 705].)

As there has to be a reconsideration by the commissioner of the penalty it becomes unnecessary for us to consider or determine the question raised by us at oral argument, namely, whether this court has power to annul the order of the commissioner on the sole ground, if it should so find, that the penalty imposed is too drastic for the violations found.

The judgment is reversed and the trial court is directed to enter judgment commanding respondent commissioner to set aside his order of revocation and further directing him to redetermine his order in the light of this court's opinion and judgment.

Peters, P. J., and Wood (Fred B.), J., concurred.