[Civ. No. 18360.   Second Dist., Div. Three.   Dec. 10, 1951.]

SHELIA A. PRATT, Respondent, v. LOS ANGELES COUNTY CIVIL SERVICE COMMISSION et al., Appellants.

Harold W. Kennedy, County Counsel, Andrew O. Porter, and John B. Anson, Deputy County Counsel, for Appellants.

Robinson, Guerin & Powers, Joseph P. Guerin and John J. Guerin for Respondent.

VICKERS, J. pro tem.—The petitioner-respondent, a civil service employee of the county of Los Angeles, was a senior typist clerk in the office of the county clerk. On May 16, 1949, she was notified by the county clerk that as of June 2, 1949, she was permanently discharged from that position. In conformity with the rules of the County Civil Service Commission she denied the charges contained in the letter of discharge and requested a hearing before the commission. On June 2, 1949, in the manner prescribed by the county charter and the rules of that commission, a hearing was had before the commission. On June 7, 1949, the commission rendered its decision sustaining respondent's discharge. Respondent thereupon petitioned the superior court for a writ of mandate. Upon issue joined a trial was had following which that court made its findings and rendered judgment. The judgment directed the issuance of a peremptory writ of mandate commanding the commission, its individual members and the county clerk to set aside the decision sustaining respondent's discharge. Appellants thereupon took this appeal.

The case was tried under the theory that the appellant Civil Service Commission is one of the inferior tribunals or boards referred to in Code of Civil Procedure, section 1094.5, subsections (a) and (b) and that the trial court's inquiry was limited as specified therein to the following questions:

"Whether the appellant (commission) has proceeded without or in excess of jurisdiction; whether there was then a fair trial; and whether there was any prejudicial abuse of discretion?" It is also conceded that as stated in subsection (b) "Abuse of discretion is established if the appellant (commission) has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence." Neither in the court below nor in her brief on appeal has the respondent attacked the commission's decision on the ground that the commission did not proceed as required by law or that the decision is not supported by the findings. The only evidence received in the trial court was that which had been introduced at the hearing before the commission. In their opening brief the appellants recite that the trial court found that the commission acted in excess of its jurisdiction in that there was no substantial evidence in the light of the whole record, of respondent's guilt. They state that the sole issue on this appeal is whether the findings in the language of Code of Civil Procedure, section 1094.5, subsection (c), are "supported by substantial evidence in the light of the whole record." By her reply brief the respondent declares: "Respondent agrees with the appellants to the extent that the sole issue of this appeal is confined to the question of whether there was no substantial evidence of respondent's guilt to sustain the commission's decision upholding her discharge." There are in reality two questions before us, namely, (1) is there substantial evidence which supports the commission's findings, (2) do the findings support its decision?

By his letter of May 16, 1949, discharging respondent, County Clerk Ostly declared that she was ". . . guilty of wilfully destroying, mutilating, defacing, removing from and secreting, public papers and documents contained in the probate files of the Long Beach Department of the Superior Court in and for the County of Los Angeles. The specific facts constituting the above described offense are as follows:

"That for a period of several weeks prior to May 2nd, 1949, and particularly on April 29, and May 2, 1949, you have removed numerous papers from probate files, consisting of such documents as Affidavits of Publication of Notice to Creditors, Certificates of Inheritance Tax, Inheritance Tax Releases, and that more particularly on or about the 2nd day of May, 1949, you wilfully removed from said probate files,

the following described documents and papers which you mutilated and secreted:

| Number | Document | Date Filed |
|---|---|---|
| LBP 18882 | Certificate of Inheritance Tax Appraiser | 11- 1-48 |
| LBP 12413 | Affidavit of Publication of Notice to Creditors | 8-14-43 |
| LBP 18880 | Certificate of Inheritance Tax Appraiser | 4- 7-49" |

By its decision of June 7, 1949, upholding the discharge and entered in its minutes the commission declared.

" 'In the matter of the discharge of Shelia A. Pratt, heard and submitted on June 2, 1949, the Commission having considered all the evidence, including the appearance and demeanor of Mrs. Pratt while testifying, and being fully advised in the premises, found that the facts stated in the letter of discharge dated May 16, 1949, are true; that on May 2, 1949, Mrs. Pratt removed from the files, mutilated, and secreted, certain public records as charged in the letter of discharge; that such action was not done with criminal intent but because of her emotionally unstable condition; that such removal, mutilation and secretion of public records constitute reasonable grounds for discharge; that none of the facts stated in the Answer to Charges, dated May 19, 1949, are true; that the resignation was withdrawn with the consent of the department head and is therefore not material to this case; that such resignation was entirely voluntary and entered into without duress or menace. The Commission concluded—Commissioners Mack and Crouch voting "aye"—that the reasons justify the discharge. Commissioner O'Keefe took no part in the findings or decision.' "

Respondent for a period of 18 months prior to May, 1949, had been assisting Probate Commissioner Charvat of the Long Beach Superior Court. One of her principal duties was to check the probate files prior to each Monday, which was the regular calendar day, to determine if the necessary supporting documents were present. It was also Commissioner Charvat's duty to separately check such files. They were the only persons who did so. On each Monday for two or three weeks prior to May 2d, Judge Maltby, who regularly heard the probate calendar, had found from three to six necessary documents missing which Charvat had noted as present at the time of his checking. An examination of the

files disclosed that they had been torn from the files leaving small portions thereof remaining at the points where the files were bound. An investigation was then instituted by the judge and the county clerk about April 28th. It was discovered that the documents that had been torn from the files prior to the investigation were of the same general character, being Certificates of Inheritance Tax Appraiser, Affidavits of Publication of Notice to Creditors, Inheritance Tax Releases or Orders Fixing Inheritance Tax. On the evening of April 28th two investigators from the county clerk's office, Kerfoot and Peck by name, checked the files of cases on the calendar for the following Monday, May 2d. On the morning of April 29th the respondent checked the files and thereafter reported that an Affidavit of Notice to Creditors in one of the files, referred to as item 22, was missing. This document had been found and noted as present by Kerfoot and Peck the previous evening. On Saturday morning, April 29th, Kerfoot and Peck checked the remaining files noting the presence or absence of the necessary documents therein. They completed this check at 7:20 a. m. and left the files in the locked office jointly occupied by respondent and Commissioner Charvat. At 8:15 a. m. respondent arrived, followed shortly thereafter by Commissioner Charvat. About 9:30 a. m. the respondent commenced checking the files and continued to do so during much of that day. During this time Commissioner Charvat was on the bench or doing other work and did not touch the files until 7:30 p. m. At the completion of her checking the respondent reported the following items missing: Item 26, Certificate of Inheritance Tax Appraiser; item 27, Affidavit of Publication of Notice to Creditors; and item 30, Certificate of Inheritance Tax Appraiser. The presence of each of these items in the respective files had been specifically noted by Kerfoot and Peck at the time of their examination early that morning. About 5 p. m. of that day Judge Maltby and Investigator Kerfoot went to the office jointly occupied by the respondent and Commissioner Charvat. The judge looked in the wastebasket and pulled out item 26 which had been shredded into three pieces whereupon Kerfoot went to the lavatory used by the respondent and found items 27 and 30 in a crumpled condition among the soiled paper towels. Respondent should have completed the checking of the files containing items 26, 27 and 30 by 10:30 a. m. of the day in question. Commissioner Charvat testified that either he or the respondent was usually present in their joint office

or in the adjoining courtroom. Deputy Sheriff Graham testified that from the hall he kept the door of the office in question in surveillance from 11 a. m. until 1:45 p. m. of May 2d and that from 2 p. m. to much later in the afternoon of that day he kept the office under surveillance by the use of binoculars from the window of another building, during which time he saw the respondent working at her desk and saw no unauthorized persons enter. Judge Maltby and Commissioner Charvat testified that they did not remove any of the documents in question including those which had been removed prior to April 29th. An examination of the files from which items 22, 26, 27 and 30 had been torn disclosed small portions of each of the documents still held by the binder and appearing to be similar in character to the pieces that had been found in the files from which the other documents had been torn during the previous two or three weeks.

The trial court by its memorandum of opinion declared that there was no substantial evidence to support the findings of the commission and that its decision was based on mere suspicion. With this we cannot agree. ██ It seems clear to us that in the light of the whole evidence and the inferences reasonably to be drawn therefrom the findings of the commission were not only supported by substantial evidence but were also well justified. The specific finding was "that on May 2, 1949, Mrs. Pratt removed from the files, mutilated and secreted, certain public records as charged in the letter of discharge." This is supported by the evidence that at 7:20 a. m. of that day the documents in question, items 26, 27 and 30, were in their respective files in respondent's locked office; that respondent entered the office at 8:15 a. m.; that Commissioner Charvat arrived thereafter and did not touch those files that day; that respondent or Mr. Charvat or both were present at all times between 8:15 a. m. and 9:30; that respondent checked those files between 9:30 a. m. and 10:30 a. m.; and that the documents were torn out, mutilated and secreted in the office wastebasket and lavatory. The specific finding is also supported by the following inferences which could reasonably be drawn from the above evidence and the record as a whole: That no one entered the office between 7:20 a. m. and 8:15 a. m.; that no one except respondent touched the files between 8:15 a. m. and 10:30 a. m.; that the documents were removed by respondent while checking those files that morning and thereafter mutilated and secreted.

Respondent urges that no one saw respondent take the documents or found them on her person and that Mr. Charvat had an equal opportunity, and since there were several keys to the office some third person may have been the guilty one. Such an argument while a proper one to be made before the commission at the hearing can be of no effect after that commission has rendered its decision. ■ Circumstantial evidence was sufficient. Demonstration of respondent's guilt was not required. ■ Neither, since this is a civil case, was it necessary to establish her guilt beyond a reasonable doubt. The commission chose to believe Mr. Charvat's denials that he had taken the documents and to disbelieve respondent. The mere fact that there was a bare possibility that some third person might have taken them did not prevent the commission from finding that respondent had done so. Such a possibility was most remote. It would have had to be done by use of an office key between 7:20 a. m. and 8:15 and such a person would have had to search through 80 voluminous files to find these particular types of documents and then have secreted them where found. In addition it is difficult to conceive of any motive for such an act.

■ Respondent urges that there was no motive shown on her part. It is hard to understand why she should have done the acts in question. Appellant urges that it may have been an endeavor on her part to impress Mr. Charvat with the need for her services in double checking the files. Be that as it may the commission found that it was the result of her "emotionally unstable condition." There was evidence that respondent had for some time been passing through a period of menopause. Respondent urges that this fact was discovered during the conversations between respondent and the county clerk and his deputies at the time respondent submitted her resignation, later withdrawn, and that all parties had agreed the resignation was irrelevant. However, it was respondent who developed the subject and relies on it in her brief. In any event the commission had every opportunity to observe her appearance and demeanor and her manner of testifying during the hearing and was entitled to draw its own conclusions in regard to her condition of mind. Both the trial court and we are bound thereby.

■ Respondent also argues that if we assume the finding as to the removal of items 26, 27 and 30 on May 2d is supported by substantial evidence, that is not true as to the portion of the letter of discharge which charged that for a

period of several weeks prior to May 2d and particularly on April 29th (and on May 2, 1949) respondent took numerous papers from the files. Respondent urges therefore that in that event only a portion of the findings are supported by substantial evidence and we must remand the matter to the commission for reconsideration. Such is the procedure to be followed in a proper case therefor. (*See Cooper* v. *State Board of Medical Examiners,* 35 Cal.2d 242, 244 [217 P.2d 630, 18 A.L.R.2d 593], and *Jones* v. *Maloney,* 106 Cal.App. 2d 80, 90 [234 P.2d 666].) But this is not such a case. The evidence of the events of April 29th set out earlier in this opinion, the similarity of the facts surrounding the removal of all of the documents torn from the files and the evidence as a whole, with the inferences to be reasonably drawn therefrom, would substantially support a finding that respondent had so removed documents during the prior weeks before May 2d as well as on that day. Furthermore, from a reading of the findings and decision of the commission, as shown by the minutes of June 7th set out above, it appears that respondent's discharge was approved because "on May 2, 1949, Mrs. Pratt removed from the files, mutilated, and secreted, certain public records as charged in the letter of discharge." The only reference in the minutes to April 29th and the weeks prior thereto was a general statement immediately preceding this declaration towit: "The facts stated in the letter of discharge dated May 2, 1949, are true." If the word "facts" includes the reference in the letter of discharge to the events prior to May 2d, it may well be that the commission incorporated them as additional support for its basic finding that respondent had committed the acts complained of on May 2d.

In any event to remand the matter to the commission could only result in the same decision. By its findings that respondent had removed, mutilated and secreted public documents on May 2d, the commission not only found her guilty of a most serious breach of duty, but also of having committed an act of a felonious nature in that she had violated section 6200 of the Government Code. That section reads as follows: "Every officer having the custody of any record, map, or book, or of any paper or proceeding of any court, filed or deposited in any public office, or placed in his hands for any purpose, who is guilty of stealing, wilfully destroying, mutilating, defacing, altering or falsifying, removing or secreting the whole or any part of such record, map, book, paper, or

proceeding, or who permits any other person to do so, is. punishable by imprisonment in the State prison not less than one nor more than 14 years.'' The commission would be doing less than its duty if it failed to uphold respondent's discharge in view of that clear declaration of public policy. We must assume that the commission would perform its duty.

What we have said demonstrates that the findings of the commission support its decision. The judgment is reversed and the trial court is directed to quash the peremptory writ of mandate.

Shinn, P. J., and Wood (Parker), J., concurred.