[Civ. No. 42218. First Dist.. Div. Two. Aug. 29, 1979.]

ALBERT GUREWITZ et al., Plaintiffs and Appellants, v. WESLEY J. KINDER, as Insurance Commissioner, etc., Defendant and Respondent.

## COUNSEL

Maloney, Chase, Fisher & Hurst, Peter W. Fisher, Karns & Karabian and Walter J. Karabian for Plaintiffs and Appellants.

Evelle J. Younger and George Deukmejian, Attorneys General, and Julian O. Standen, Deputy Attorney General, for Defendant and Respondent.

## OPINION

**TAYLOR, P. J.**—Gurewitz and G.F.S. Insurance Agency, Inc. (GFS) (hereafter collectively Gurewitz)[1] appeals from a judgment denying his

[1]The record indicates that Gurewitz had an individual license as a life and disability agent and was the named transactor on the corporate insurance agents' license of several corporate entities that he controlled: Gurewitz-Fitzgerald & Company; Gurewitz Fitzgerald Insurance, Inc.; Gurewitz-Fitzgerald & Schmidt, Inc.; G. F. Associates, Inc.;

petition for a writ of mandate to compel the Insurance Commissioner to vacate his decision revoking the insurance licenses and licensing rights of Gurewitz for a violation of Insurance Code section 1734. He contends that: 1) there could be no violation of the statute as his relationship with Fireman's Fund (Fireman's) was a joint venture or partnership rather than an agency; 2) even if the statute applies, there is insufficient evidence to establish a violation of section 1734, pursuant to the applicable "clear and convincing evidence" standard; and 3) the penalty imposed by the insurance commissioner was too severe, as there had been no appropriation or diversion of funds for personal use. For the reasons set forth below, we have concluded that there is no merit to any of these contentions and that the judgment must be affirmed.

The facts are not in dispute and are as follows: Since 1953, Gurewitz had been licensed as an insurance broker under several individual and corporate licenses. He directed and controlled the insurance business of each of the corporate licensees.[2] In 1964, he began selling package bar and restaurant policies, which resulted in a successful new business for him. Until December 31, 1973, Gurewitz was an agent for the Mission Insurance Company. The record does not reveal why his relationship with Mission was terminated.[3]

In 1973, Fireman's approached Gurewitz and agreed to provide a market for his business and to remain "on risk" for three years. Gurewitz became a representative of Fireman's on January 1, 1974. In 1974, Gurewitz began to expand his business to other states. The expansion, however, was beyond his administrative capabilities and he sustained an operating loss that year. After Gurewitz discovered that his funds were not sufficient to pay the premiums to Fireman's in 1974, he sold 85 percent of the stock of some of the corporate licenses to Holding Company, Inc. However, he retained control of the insurance business and the corporate licensees until February 1976.

and G.F.S. Insurance Agency, Inc. Only the latter is a party to this appeal, although Gurewitz appeared on behalf of all of the corporate entities at the administrative hearing, which resulted in a recommendation that the licenses of all of the above be revoked.

[2] On February 1, 1976, Gurewitz resigned as president of G. F. Associates, Inc., Gurewitz-Fitzgerald & Company, and Gurewitz-Fitzgerald Insurance, Inc., but retained his 15 percent stock ownership in these entities.

[3] Gurewitz indicated that he terminated the agreement as he needed a larger insurer to handle a larger volume of business. We may infer that after our Supreme Court held in *Vesely* v. *Sager,* 5 Cal.3d 153 [95 Cal.Rptr. 623, 486 P.2d 151], that bars and restaurants in certain circumstances become liable to persons injured by inebriated customers, Gurewitz' business of providing insurance for bars and restaurants became less profitable.

Gurewitz received an annual salary of $27,400 for 1973, and $32,000 for 1974, 1975 and 1976, plus business expenses; all of these were paid out of premium trust fund monies. In addition, Gurewitz borrowed about $35,000 from the corporate licensees for living expenses, and then repaid the loans in full with interest. The corporate licensees also purchased with premium trust fund monies an automobile and tennis club membership for the use of Gurewitz; these were subsequently sold by the entities for a profit.

An audit by the Insurance Commissioner's investigative staff determined that as of February 4, 1976, there were deficits in trust accounts of three corporations owned, controlled and directed by Gurewitz in the total amount of $335,356.25. These monies represented premium payments received by Gurewitz on behalf of Fireman's for insurance policies issued by Fireman's. The auditor's report, based on an extensive analysis of the financial records of Gurewitz' corporations, established that the shortages had existed from 1973 to February 1975, and concluded that some of these trust fund diversions were the fault of Gurewitz' use of incoming premium payments from Fireman's policies to satisfy Gurewitz' obligations to Mission. For example, on February 19, 1974, the board of directors of one of Gurewitz' corporations resolved that the corporation would pay Mission the sum of $455,609.25 in five monthly installments, commencing in February 1974 and ending in June 1974.

The capital promised by Holding Company to Gurewitz did not materialize and Fireman's renegotiated its arrangements with Gurewitz in April 1975. In November 1975, Fireman's cancelled its agreement with Gurewitz and then filed an action against him and GFS for unpaid premiums; Gurewitz and GFS cross-complained for Fireman's breach of its agreement to keep the market available for a three-year period.

The administrative law judge found, in pertinent part, that: Gurewitz violated Insurance Code section 1734, as he had diverted $335,356.25 in fiduciary funds and revoked all of his insurance licenses and licensing rights. After the Insurance Commissioner adopted the administrative decision, Gurewitz filed the instant petition for mandamus pursuant to Code of Civil Procedure section 1094.5. The court found that the Insurance Commissioner's findings of fact were supported by the evidence adduced at the administrative hearing and concluded that Gurewitz was an agent for, and not a joint venturer with, Fireman's and, in this capacity, held the funds as a fiduciary and denied the petition.[4]

---

[4]The Insurance Commissioner's order revoking the insurance licenses and licensing rights of Gurewitz and all of the corporate entities was stayed pending this appeal.

Insurance Code section 1734, set forth below,[5] requires that fiduciary funds held by a licensee on behalf of another *must* either be remitted promptly to the principal or held in a trust account. Section 1733 defines fiduciary funds as: *"All funds received by any person acting as an insurance agent . . .* as premium or return premium on or under any policy of insurance . . ." (italics added), and further provides that any person who diverts or appropriates fiduciary funds to his own use is guilty of theft and punishable for theft as provided by law. Here, the court found that the funds received by Gurewitz as premiums and return premiums on policies of insurance issued by Fireman's were not remitted to Fireman's, as required by section 1734 and, in fact, were diverted by Gurewitz and never paid back.

Gurewitz argues that he was a joint venturer with, and not an agent of, Fireman's; accordingly, the monies converted were not fiduciary funds and section 1734 is applicable. This contention borders on the frivolous, as the record indicates that Gurewitz personally admitted that he considered himself an agent and that the joint venture theory was an "excuse" fabricated by his counsel. In any event, a joint venture is defined as ". . . an undertaking by two or more persons jointly to carry out a single business enterprise for profit. [Citation.] There must be a community of interest in the enterprise; a sharing of profits and losses; and joint participation in the conduct of the business" (*Lasry* v. *Lederman,* 147 Cal.App.2d 480, 485-486 [305 P.2d 663]).

---

[5]At the time here pertinent, the statute read as follows:

"This section *applies to any person licensed,* whether under a permanent license, restricted license, temporary license, or certificate of convenience, *to act in any of the capacities specified in Section 1733. If fiduciary funds, as defined in Section 1733 and held for one or more principals, are maintained in accordance with subsection (b)* hereof, such funds for other principals may be held and remitted in accordance with subsection (a) hereof. *Otherwise each such person who does not make immediate remittance of all funds received as premium* to the insurer entitled thereto *must elect and follow with respect to such funds, one of the following methods*:

"(a) *Remit premiums,* less commissions, and return premiums received or held by him *to the insurer* or the person entitled thereto *within fifteen (15) days after the receipt thereof:* or

"(b) *Maintain such fiduciary funds at all times in a bank account or depository separate from any other account or depository, in an amount at least equal to the premiums and return premiums,* net of commissions, received by him and unpaid to the persons entitled thereto or, at their direction or pursuant to written contract, for the account of such persons. However, *such person may commingle with such fiduciary funds in such account or depository such additional funds as he may deem prudent for the purpose of advancing premiums, establishing reserves for the paying of return commissions or for such contingencies as may arise in his business of receiving and transmitting premium or return premium funds. Further, such person may commingle the funds of any principal with his own funds to an unlimited extent, if such principal in writing specifically waives the segregation requirements of this section. Commingling of funds as herein permitted shall not alter the fiduciary nature of such premium or return premium funds."* (Italics added.)

■ Gurewitz' agreement with Fireman's, however, indicates that the parties did not intend to form a joint venture. The agreement is entitled "Agency Agreement" and specifically refers to Gurewitz as "agent." "A determination by the trier of fact as to the existence or nonexistence of an agency upon conflicting evidence will not be disturbed on appeal" (*K. King & G. Shuler Corp.* v. *King*, 259 Cal.App.2d 383, 393 [66 Cal.Rptr. 330]). Since the existence of a joint venture depends upon the intent of the parties, it is not disputed that there is ample substantial[6] evidence to support the finding of the superior court that Gurewitz was an agent for, and not a joint venturer with, Fireman's, and the converted monies were funds received as premiums and return premiums. Thus, funds held by Gurewitz were fiduciary funds within the meaning of section 1733, and subject to section 1734.

■ Gurewitz' contention pertaining to the sufficiency of the evidence likewise borders on the frivolous. He asserts that no evidence supports the revocation of the GFS license or the inference drawn by the court that the fiduciary funds he held for Fireman's were used to pay his debts to Mission. Gurewitz' control of all of the corporate licensees was not disputed below; in addition, Gurewitz appeared at the administrative hearing on behalf of all of them. The inference that Gurewitz used to pay Mission some of the fiduciary funds held for Fireman's is a reasonable one in the light of: 1) the uncontroverted findings concerning Gurewitz' receipt of these funds in 1975 and his failure to maintain them in a trust account or remit them to the persons entitled thereto within 15 days after receipt; and 2) the directors' resolution to pay Mission $455,609.25 in 5 monthly installments between February and June of 1974. In any event, it does not matter for what specific purposes Gurewitz diverted the fiduciary funds, as the uncontroverted evidence indicated that he did so.

■ Gurewitz next argues that the Insurance Commissioner abused his discretion by imposing the maximum penalty of revocation of his licenses and licensing rights. Gurewitz argues that revocation was too severe in view of the circumstances.[7] Abuse of discretion is defined as

[6]Contrary to Gurewitz' contention, the proper standard for review is the substantial evidence rule (*Harlow* v. *Carleson*, 16 Cal.3d 731 [129 Cal.Rptr. 298, 548 P.2d 698]; *Merrill* v. *Department of Motor Vehicles*, 71 Cal.2d 907 [80 Cal.Rptr. 89, 458 P.2d 33]; *Jones* v. *Maloney*, 106 Cal.App.2d 80, 84 [234 P.2d 666]). No authorities support his contention that the applicable standard in this case is that of "clear and convincing evidence," which was recently adopted in *Collins Sec. Corp.* v. *Sec. & Exchg. Com'n*, 562 F.2d 820, 823-826. Even if so, the instant record, summarized above, provides clear and convincing evidence that Gurewitz' relationship was that of an agent and not a joint venturer or partner.

[7]Gurewitz relies on the following evidence of mitigating circumstances introduced at the hearing: the length of time Gurewitz had been licensed (24 years), a total absence of

"discretion exercised to an end or purpose not justified by and clearly against reason, all of the facts and circumstances being considered" (*Brown* v. *Gordon*, 240 Cal.App.2d 659, 666-667 [49 Cal.Rptr. 901]; *Sharon* v. *Sharon*, 75 Cal. 1, 48 [16 P. 345]; *Kalmus* v. *Kalmus*, 103 Cal.App.2d 405, 415 [230 P.2d 57]).

Applying the above standard to the facts of the instant case, we cannot say that the penalty of revocation was so "clearly against reason as to amount to an abuse of discretion." Gurewitz converted almost one-third of a million dollars. Although Gurewitz has been licensed for 24 years and has had no prior disciplinary record, he has failed to pay back any of the diverted fiduciary funds. The administrative judge who heard the evidence and observed Gurewitz' demeanor while testifying, deemed the punishment reasonable. Moreover, the Insurance Commissioner who imposed the punishment and the reviewing superior court agreed that the punishment was a valid one. ■ It is well settled that "in reviewing the penalty imposed by an administrative body which is duly constituted to announce and enforce such penalties, neither a trial court nor an appellate court is free to substitute its own discretion as to the matter . . ." (*Brown* v. *Gordon, supra,* 240 Cal.App.2d, p. 667). In *Brown, supra,* this court (Division One) upheld the revocation of a real estate license for conversion of $420; in *Bohn* v. *Watson,* 130 Cal.App.2d 24 [278 P.2d 454], the revocation of a real estate license for conversion of $55,000 was upheld. ■ In light of the fact that Gurewitz converted $335,356.25, which has remained unpaid, we hold that the Insurance Commissioner did not abuse his discretion in revoking all of the licenses held by Gurewitz.[8]

Shortly before oral argument, Gurewitz filed an application to produce additional evidence pursuant to California Rules of Court, rule 23(b), namely, that on January 16, 1979, his litigation with Fireman's has been settled and that he has promised to make payments in restitution. ■ As we indicated in *Rollins* v. *City and County of San Francisco,* 37 Cal.App.3d 145, 148 [112 Cal.Rptr. 168], our power to take additional evidence and make findings pursuant to California Rules of Court, rule 23(b) and Code of Civil Procedure section 909, is limited to questions of

any prior disciplinary action by the Insurance Commissioner or any other regulatory or law enforcement agencies, and the fact that no one was financially injured except for Fireman's.

[8]We note that pursuant to Insurance Code section 1733, discussed above at page 465, Gurewitz could also have been prosecuted for grand theft.

law and usually exercised very rarely to affirm a judgment or reverse with directions. In addition, the matter here sought pertains to a factual issue, mitigation, and occurred long after judgment. Accordingly, the application is denied (cf. *De Angeles* v. *Roos Bros., Inc.,* 244 Cal.App.2d 434, 443 [52 Cal.Rptr. 783]).

The judgment is affirmed and the Insurance Commissioner is awarded his costs pursuant to Code of Civil Procedure section 1034 and California Rules of Court, rule 26.

Rouse, J., and Miller, J., concurred.