[Civ. No. 22327.   First Dist., Div. Two.   Aug. 23, 1966.]

JOHN DE ANGELES, Plaintiff and Respondent, v. ROOS BROS., INC. et al., Defendants and Appellants.

436

Heller, Ehrman, White & McAuliffe, Caspar W. Weinberger, M. Laurence Popofsky, David Livingston and J. W. Ehrlich for Defendants and Appellants.

Joseph L. Alioto, Frederick P. Furth and Gerhard Stoll for Plaintiff and Respondent.

TAYLOR, J.—Plaintiff, John De Angeles (hereafter De Angeles), filed this action for breach of his contract of employment as the executive vice-president of defendants, Roos Bros., Inc. and Robert S. Atkins Company (hereafter Roos-Atkins). On this appeal from a judgment in his favor entered after a court trial, and from the order denying the motion for a new trial, the questions are: 1) the sufficiency of the evidence to support the findings on the issue of liability; 2) the trial court's alleged abuse of discretion in denying defendants' motion to vacate the submission; and 3) the sufficiency of the findings to support the judgment on the amount of damages awarded and the application for new evidence on appeal to mitigate damages.

Viewing the record in favor of the judgment, as we must, and disregarding the conflicts and contradictions in the evidence, the following appears: On January 9, 1959, the parties entered into a written agreement for the employment of De Angeles as executive vice-president of Roos-Atkins for a period of 10 years starting January 1, 1958, at a salary of $35,000 per year.

De Angeles and Edward H. Gauer, the chairman of the board of Roos-Atkins, had been associated in the men's clothing business since 1944 when they formed a partnership to buy the Atkins Company. In 1958, they negotiated a transaction whereby Atkins acquired all of the stock of Roos Bros.; Gauer became chairman of the board of Roos-Atkins and De Angeles, executive vice-president and men's clothing buyer; Gauer owned 51 percent of the stock of Atkins; De Angeles, 38 percent; the balance was owned by Colburn, the president of the corporation. Since 1944, De Angeles had regularly made two

or three trips to New York City annually in connection with the men's clothing buying programs of Atkins and then Roos. In this field, customarily, the major portion of the annual requirement was purchased in January and more or less completed in March; the trips later in the year merely supplemented the earlier purchases.

In January 1962 De Angeles became critically ill with ulcers, was away from his office from January 9 until February 7 and thus was unable to participate in the January buying trip. After his return, Gauer suggested that he purchase some additional merchandise to supplement the December-January sales. Between March 11-15, De Angeles attended a meeting of merchandising executives in Gauer's office to discuss the balance of men's clothing purchases to be made in New York that month. De Angeles testified that Gauer expressed solicitude for De Angeles' health and suggested that it was not necessary for him to make the March buying trip to New York. De Angeles indicated that he had recovered and that it was his responsibility to complete the buying. Gauer suggested that De Angeles should take care of his health and stay out of the "rat race" but did not order De Angeles not to go to New York. On March 16, 1962, De Angeles made the trip to New York and carried on the business of Roos-Atkins.

On March 20, 1962, Gauer sent a telegram informing De Angeles of his immediate discharge "by reason of your acting contrary to my specific instructions as chief executive officer [of Roos-Atkins] . . . in going to New York." On March 26, 1962, the discharge was ratified at a board meeting of Roos-Atkins. De Angeles was not paid anything after March 31, 1962.

The trial court found that the discharge of De Angeles was wrongful and without just or adequate cause; that De Angeles had sought but had not obtained or been offered any employment comparable to that under his contract with Roos-Atkins and that prior to his wrongful discharge, De Angeles faithfully performed all of his duties. Accordingly, the court entered its judgment for breach of contract, awarding respondent damages of $201,256, representing $35,000 per year from April 1, 1962, to January 1, 1968, with the portion from the date of judgment, March 20, 1964, to January 1, 1968, reduced to its present value by application of a 6 percent factor.

### The Propriety of the Dismissal

The first and major contention on appeal is that the evidence does not support the judgment because the dismissal

of De Angeles was justified by his deliberate violation of Gauer's order not to go to New York.

When a finding of fact is attacked on the ground that there is no substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with a determination of whether there is any substantial evidence, contradicted or uncontradicted, which will support the finding (*Lipka* v. *Lipka*, 60 Cal.2d 472, 475 [35 Cal.Rptr. 71, 386 P.2d 671]; italics supplied by the Supreme Court). The duty of an appellate court is not to seek out and analyze conflicts or to substitute its own appraisal for that of the trial court in the absence of an obvious abuse of discretion. When two or more inferences can be reasonably deduced from the facts, a reviewing court is without power to substitute its deductions for those of the trial court. In the absence of prejudicial error of law or violence to reason, it is the duty of an appellate court to uphold the trial court (*Schmedding* v. *Schmedding*, 240 Cal. App.2d 312, 314-315 [49 Cal.Rptr. 523]; *Crawford* v. *Southern Pac. Co.*, 3 Cal.2d 427 [45 P.2d 183]).

The uncontroverted evidence indicates that Roos-Atkins operated under a double structure and chain of command, one relating to the corporation as such and the second relating to its merchandising operations. In the first, De Angeles was executive vice-president, responsible to Gauer; in the second, De Angeles was in charge of buying men's suits and overcoats, responsible to Gauer as well as to the merchandising manager who set up the budget. De Angeles' responsibilities as a buyer represented about $5,000,000 of Roos-Atkins annual business of $22,000,000. He was a member of the executive group that made policy decisions for Roos-Atkins. In keeping with his position, De Angeles had a travel allowance and expense account and did not have to get Gauer's or anyone else's permission before making a trip. There are also the undisputed facts of his many years of close association with Gauer on a business as well as personal level and his ownership of 38 percent of the stock of Roos-Atkins.

Appellants more or less concede that these facts support an inference that the position of De Angeles was such that he did not operate under anyone's orders or supervision in relation to his buying trips, but argue that this inference is overcome by the alleged order issued by Gauer at the meeting of executives. We think that the facts discussed above concerning De Angeles' high position and responsibilities, and his long-standing close relationship with Gauer, demand evidence of an un-

equivocal order from Gauer. While conflicting, the evidence is clearly sufficient to support the trial court's finding that no such order was given.

Appellants contend that the fact that De Angeles consulted his attorney before going to New York and asked him to write a letter, received by Gauer before he sent the telegram of discharge, indicated that De Angeles understood Gauer's friendly suggestion that he not go to New York as an unequivocal order. The contents of the letter are set forth in full below.[1] The evidence indicated that the letter also referred to a number of past disagreements between Gauer and De Angeles concerning the merchandising policies of Roos-Atkins, the treatment of young De Angeles, and the corporate structure of the organization. Unquestionably, the weight to be accorded the letter and its contents was a matter for the trial court. Under the evidence presented, the judge could reasonably have concluded that, because of various disagreements between them, Gauer used the March 1962 trip to New York as nothing more than an excuse to fire De Angeles.

Appellants attach significance to the fact that De Angeles made his own travel arrangements for the March 1962 trip to

---

[1] "For some time, John D'Angeles has talked to me about the fact that relations between you two were deteriorating. This, obviously, is no good for you, John, or the business. Within the past two months, I have talked with Bob Harris about the desirability of sitting down with you and him and determining whether it was possible to ameliorate this condition. Both you and Bob have chosen to ignore this.

"I am, therefore, writing you to say that I have advised John that your actions over the past two years constitute a violation of his employment contract, and in addition to that, give him cause for bringing an action to dissolve the corporation and to partition its assets under the provisions of Sections 4650 and 4651 of the Corporation Code of the State of California. There is the matter of manipulating inventories which I find alarming.

"From the evidence I have seen and heard, I have advised John that he has a sound basis for these two actions and, in addition to that, I believe that your actual course of conduct warrants the claim that there is in operation a scheme to humiliate and embarrass John to the point where he will be forced to sell out at a sacrifice price.

"If you believe that there is some opportunity to achieve an amicable adjustment, I shall be very happy to meet with Bob Harris and you to explore this. A buy-or-sell arrangement may be worked out in such a conference. If, on the other hand, you choose to ignore this suggestion, and do not respond to this letter, you will, of course, leave us no alternative but to have the issue determined in court. Failing to hear from you, we would start the court proceedings by filing a complaint on April 9, 1962.

"It was good of you to suggest to John that you would not expect him to carry on his duties in New York if he believed his health would suffer thereby. However, since John desires to carry out his duties without special favors being granted to him, and since his doctor has reassured him on the state of his health, he will do what is expected of him in New York."

New York instead of going through company channels. However, there is ample evidence that the travel regulations for Roos-Atkins executives did not apply to Gauer and De Angeles, that De Angeles had a travel allowance and air credit card supplied by the company, and had in the past made his own travel arrangements.

Appellants contend that the threats of destructive litigation in the above letter justify De Angeles' dismissal and that they can rely on any ground that existed at the time. But appellants conceded at the trial that the only reason for the dismissal was the defiance of Gauer's order not to go to New York, as indicated in Gauer's telegram of March 20. Having chosen to try the matter on this theory, the belated assertion of other grounds, after learning of the court's ruling, is irrelevant. We conclude that there is sufficient evidence to support the trial court's finding that De Angeles was not ordered to refrain from going to New York and that since this was admittedly the only reason for his discharge, his discharge was therefore wrongful.

### The Motion to Vacate Submission

The second major contention on appeal relates to the trial court's refusal to grant appellants' motion to vacate submission in order to permit the introduction of new evidence. The record indicates that the trial was concluded and the matter submitted on May 3, 1963. On August 12, 1963, the court entered its minute order rendering judgment in favor of De Angeles. On January 30, 1964 (almost eight months after submission), appellants filed their motion to vacate the submission. The motion was accompanied by affidavits indicating that: (1) the depositions in appellants' United States District Court action against one of their major competitors, Botany Industries, Inc., owned by H. Daroff & Sons, Inc., showed that in April 1963 De Angeles had sold his 38 percent interest in Roos-Atkins to Botany Industries, Inc.; and (2) that appellants did not present evidence of mitigation of damages during the trial because they were of the opinion that they would win on the issue of liability and now wished to present evidence that De Angeles was offered employment at the St. Francis Hotel store of Hastings, Inc. at a salary of $15,000-$20,000 a year.

The granting or denial of a motion to vacate the submission of a cause for the purpose of introducing additional evidence rests within the sound discretion of the trial court and will not be disturbed on appeal unless there has

been a clear abuse of discretion (*Weber* v. *Marine Cooks' & Stewards' Assn.*, 93 Cal.App.2d 327 [208 P.2d 1009]).

Appellants urge that the matters alleged in the affidavit in support of their motion to vacate submission provided proof that De Angeles had deliberately provoked his dismissal with the expectation of subverting the Roos-Atkins organization and that he would be employed by the competing interests. The only issue presented to the court in the instant case was whether or not appellants' discharge of De Angeles for insubordination was justified. Thus, the trial judge properly concluded that the many other facets of the relationship of appellants and De Angeles and De Angeles' sale of his stock to Botany Industries, Inc., etc., were properly left to other proceedings between the parties and did not constitute grounds for vacating submission.

The court's refusal to vacate to permit appellants to prove De Angeles' $15,000 Hastings job opportunity is clearly not an abuse of discretion in view of their tactical decision not to contend for mitigation of damages at the trial and the court's justified conclusion from the affidavit that this employment was not comparable to his Roos-Atkins position. Furthermore, appellants' affidavit was fatally defective in failing to allege due diligence in the discovery and introduction of evidence available at the time of trial (*Kaplan* v. *Hacker*, 113 Cal.App.2d 571, 574 [248 P.2d 464]; *Keppelman* v. *Heikes*, 111 Cal.App.2d 475, 483 [245 P.2d 54]; *Kan* v. *Tsang*, 90 Cal.App.2d 538, 542 [203 P.2d 86]). We have read and considered all of appellants' authorities and conclude that none of them would support this motion to vacate made some eight months after submission and long after the court had entered its minute order ruling against them.

### Application To Introduce Evidence of Mitigation on Appeal.

Appellants next refer to depositions in other litigation and newspaper articles and advertisements indicating De Angeles has now obtained a position at Pauson's, a company owned by Daroff-Botany, Inc., which is comparable to his prior employment with Roos-Atkins. It is contended that since such information was not available to appellants until after judgment, this court should take additional evidence under rule 23(b) of the California Rules of Court. We do not agree.

The proper measure of damages for a wrongful termination of employment is the amount of salary provided in the contract for the entire remaining uncompensated period of

service *unless the employer is able to affirmatively establish mitigation* by showing other comparable employment available to the employee (*de la Falaise* v. *Gaumont-British Picture Corp.*, 39 Cal.App.2d 461, 469 [103 P.2d 447]). ▉ Although stated as an issue in the pleadings and pretrial order, there was *no evidence* of either present or future mitigation offered by appellants at the trial, and the court adequately disposed of the issue in its ultimate finding that De Angeles sought but had not obtained nor been offered employment comparable to that under his contract with Roos-Atkins (*Kraemer* v. *Superior Oil Co.*, 240 Cal.App.2d 642, 647 [49 Cal.Rptr. 869]). The contention that equity demands that appellant be allowed to show De Angeles' employment with Pauson's can be made in almost all damage cases where the factual relationship of the parties has been materially altered subsequent to judgment and while the case is still on appeal. For example, logic would require a reassessment of damages after judgment in the countless personal injury actions where the medical prognosis at the trial is not borne out by the plaintiff's subsequent rate of recovery. In brief, there could be no finality to any action involving the issue of future damages.

▉ One would be hard pressed to imagine a more emphatic and complete waiver of the issue of mitigation than in this case. Not only did appellants refrain from introducing any evidence on the subject but their attorney in his affidavit supporting a motion to vacate submission flatly stated, "defendants did not present evidence of mitigation of damages during the prior trial proceedings because they were of the opinion that plaintiff's disobedience of the Chief Executive Officer of the companies' orders was sufficient cause for plaintiff's discharge." Appellants apparently felt that to emphasize De Angeles' skill, experience and connections in the trade would weaken their defense by enhancing the value of his services in the eyes of the trier of fact. It is one thing to allow a litigant on appeal to reopen a simple factual matter subject to easy computation where it is inadvertently omitted below. It is quite another matter to extricate a litigant who, as a matter of strategy and purely for his own advantage, has chosen to abandon a material issue at the trial level.

▉ As to the argument that appellants' waiver of the mitigation issue did not extend to future damages, the record indicates that prior to the entry of judgment, the trial court reminded appellants of its previous suggestion that it might be

greatly to their benefit if the judgment was made payable in annual installments in case the position of De Angeles changed. Appellants again ignored this suggestion. Having thus determined to maintain their theory throughout the proceeding below, they are now estopped on appeal from attempting to rectify this early tactical mistake by showing mitigation (*Panopulos* v. *Maderis,* 47 Cal.2d 337, 340-341 [303 P.2d 738]; *Gibson Properties Co.* v. *City of Oakland,* 12 Cal.2d 291, 298-299 [83 P.2d 942]; *Ernst* v. *Searle,* 218 Cal. 233, 240-241 [22 P.2d 715]). It is not in the interest of justice to allow appellants to play fast and loose with the decisional process by now granting a second trial on the issue of damages. A well recognized exception permitting a changed theory on appeal where there is involved only a question of law on agreed facts (*Roberts* v. *Roberts,* 241 Cal.App.2d 93, 98 [50 Cal.Rptr. 408]) obviously has no application here.

Even assuming that appellants had not waived the issue of mitigation and were not attempting to change the theory of their case on appeal, the matters here requested are not the proper subject for the application of rule 23(b) of the California Rules of Court or section 956a of the Code of Civil Procedure. Neither was intended to transform reviewing courts into trial courts (*Tupman* v. *Haberkern,* 208 Cal. 256 [280 P. 970]; *McCracken* v. *Teets,* 41 Cal.2d 648 [262 P.2d 561]) and the power granted is to be exercised sparingly and only where the purpose of the new findings would constitute a basis for an affirmance of the judgment or a basis for reversal of the judgment with directions to the trial court to enter judgment for appellants (*Estate of Schluttig,* 36 Cal.2d 416, 422 [224 P.2d 695]).

Appellants' reliance on *Crofoot Lbr., Inc.* v. *Lewis,* 210 Cal.App.2d 678 [27 Cal.Rptr. 443], and similar authorities, is entirely misplaced as these cases involved only a single undisputed document or a simple matter of computation. As appellants' application here demonstrates, many factual issues would be involved in determining whether De Angeles in good faith could have secured employment from Pauson & Company as early as March 1962 when his employment relationship with appellants was terminated, and also in determining whether his post-judgment employment was equivalent to his prior position. In addition, the application relates to matters outside the judicial proceeding occurring some 15 months after trial. The application must, therefore, be denied (*Faus* v. *City of Los Angeles,* 195 Cal.App.2d 134, 147 [15 Cal.Rptr. 783]).

The purported appeal from the order denying the motion for a new trial is dismissed. The judgment is affirmed.

Shoemaker, P. J., and Agee, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied October 19, 1966.